**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Jane Nelson, Bruce Nelson and | ) | |
| U.S. Bank National Association | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | Case No. 4:06-cv-099 |
| The First National Bank and Trust | ) | |
| Company of Williston, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's Motion for Summary Judgment filed on June 6, 2007. On July 31, 2007, the Plaintiffs filed a brief in opposition to the motion.  The Defendant filed a reply brief on August 14, 2007.  For the reasons set forth below, the Court grants the motion.

I.   **BACKGROUND**

Leonard Nelson established the "Leonard Nelson Trust" (the Trust) on July 28, 1998, naming as trustee the defendant, the First National Bank and Trust Company of Williston.  The Trust was amended on September 9, 1998, and on December 11, 1998.  Leonard Nelson restated the Trust on April 25, 2000.  Leonard Nelson's children, plaintiffs Jane Nelson and Bruce Nelson, are the beneficiaries of the Trust.  The plaintiff, U.S. Bank National Association (U.S. Bank), is the current trustee of the Trust.  The Trust (Docket No. 20-3) contained the following relevant provisions:

17.   Trustee Powers.  In the administration of the trusts, the trustee, except as otherwise provided in this instrument, shall have the following powers and rights and all others granted by law:

. . . .

    (b)      To retain indefinitely any property received by the trustee and invest and reinvest the trust property in stocks, bonds, mortgages, notes or other property of any kind, real or personal, including interests in partnerships, limited liability companies, joint ventures, land trusts or other title-holding trusts, investment trusts or other business organizations as a limited or general partner, manager, member, shareholder, creditor or otherwise, and any investment made or retained by the trustee in good faith shall be proper despite any resulting risk or lack of diversification or marketability and although not of a kind considered by law suitable for trust investments.

. . . .

34.    <u>Governing Law</u>.  The laws of the State of North Dakota shall govern the interpretation and validity of the provisions of this instrument and all questions relating to the management, administration, investment and distribution of the trusts hereby created . . . .

In 1995, Leonard Nelson established a custody account with First National Bank that contained  35,177 shares of stock in Medtronic, Inc., a medical technology company.  <u>See</u> Docket No. 21.  By 1998, the custody account contained 385,770 shares of Medtronic stock.  <u>Id.</u>  Leonard Nelson never sold a share of Medtronic stock.  On October 31, 2005, Leonard Nelson signed an "Investment Authorization," in which he stated he considered shares of Medtronic stock "a proper investment that may be indefinitely maintained by [First National Bank] despite any risk, lack of diversity, or lack of income production and shall be retained in my trust."  <u>See</u> Docket No. 22-7.  At the time of Leonard Nelson's death on June 5, 2006, the Trust contained 597,164 shares of Medtronic stock, and most of the interest in two limited partnerships that owned more than 700,000 shares of Medtronic stock.  <u>See</u> Docket No. 29.   As trustee, First National Bank never sold any shares of Medtronic stock.  <u>See</u> Docket No. 21.

On October 6, 2006, Jane Nelson and Bruce Nelson notified First National Bank that U.S.

2

Bank had been appointed the successor trustee to the Trust.  <u>See</u> Docket No. 43-8.  On October 10, 2006, U.S. Bank sent First National Bank a request for a list of documents needed to facilitate the transfer of the trust assets to U.S. Bank.  <u>See</u> Docket No. 43-10.  The letter indicated that detailed transfer instructions were forthcoming.  U.S. Bank asserts it sent the trust transfer instructions to First National Bank on October 19, 2006.  However, First National Bank contends that it did not receive the instructions until November 3, 2006.  On November 13, 2006, First National Bank transferred the trust assets to U.S. Bank.  U.S. Bank received the 597,164 shares of Medtronic stock on November 16, 2006, and sold all of the stock on November 17, 2006.

Jane Nelson, Bruce Nelson, and U.S. Bank have asserted a breach of fiduciary duty claim. They contend that First National Bank breached its fiduciary duties by failing to sell the shares of Medtronic stock from the Leonard Nelson Trust as soon as practicable after Nelson's death; failing to transfer the shares of Medtronic stock to U.S. Bank in a timely manner; failing to prepare the shares of Medtronic stock for immediate liquidation; failing to prepare and have in place a plan for the diversification of the Trust's assets upon Leonard Nelson's death; and failing to invest the Trust's assets in a manner that would produce a reasonable rate of return during the period prior to payment of the estate taxes.

II.     <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law.  <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 654 (8th Cir. 2007); <u>see</u> Fed. R. Civ. P. 56(c).  Summary judgment is not appropriate if there

are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party first has the burden of demonstrating an absence of genuine issues of material fact.  Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005).  The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

III.   **LEGAL DISCUSSION**

The Leonard Nelson Trust provides that the governing law regarding this matter shall be North Dakota law.  See Docket No. 20-3, Exhibit "E," p. 20, ¶ 34.  No written instrument was created to elect the laws of another state.  Therefore, North Dakota law applies.  It is well-established that in an action based on diversity jurisdiction, the Court "will apply the substantive law of North Dakota."  Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1047 (D.N.D. 2006).

Since 1977, a North Dakota trustee's conduct regarding retention and diversification of trust assets has generally been governed by the Uniform Prudent Investor Act, as enacted in Sections 59-02-08.1 through 59-02-08.11 of the North Dakota Century Code.  Although this Act was repealed and recodified in an altered form during the 2007 North Dakota Legislative Assembly session, the pre-2007 version applies to First National Bank's motion.

4

The Prudent Investor Act in North Dakota states the general rule that "[a] trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms distribution requirements, and other circumstances of the trust.  In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution."  N.D.C.C. § 59-02-08.2(1).  "A trustee shall diversify the investments of the trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying."  N.D.C.C. § 59-02-08.3.  The Act also permits trust language that departs from the general rule.  Section 59-02-08.1 of the North Dakota Century Code reads as follows:

1.  Except as otherwise provided in subsection 2, a trustee who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule set forth in sections 59-02-08.1 through 59-02-08.11.
2.  The prudent investor rule, a default rule, may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust.  A trustee is not liable to a beneficiary to the extent that the trustee acted in reasonable reliance on the provisions of the trust.

The Prudent Investor Act and the specific language contained in a trust instrument can eliminate the trustee's need to comply with the duty to diversify assets and exonerate the trustee from any liability for failure to diversify.  The duties imposed on a trustee by statutory or common law are default rules which exist in the absence of a provision to the contrary in the governing trust instrument.  See N.D.C.C. § 59-02-08.1

It is clear that the Court "may not apply the unerring view of hindsight . . . to determine the propriety of a trustee's administration of the Trust."  In re Estate of Cavin, 728 A.2d 92, 97 (D.C. 1999) (citation omitted).  The Court's "initial focus must be on the terms of the trust."  Id. at 98.  The prudent investor rule "focuses on the performance of the trustee, not the results of the trust."

Matter of Estate of Cooper, 913 P.2d 393, 395 (Wash. App. 1996).

The Plaintiffs contend that First National Bank did not prudently manage the Leonard Nelson Trust after Nelson passed away on June 5, 2006.  Under North Dakota law, First National Bank had a duty to Jane Nelson and Bruce Nelson to act as a prudent investor would act.  However, Section 59-02-08.1(2) of the North Dakota Century Code allowed for the inclusion of provisions in the trust that "expanded, restricted, eliminated, or otherwise altered" the prudent investor rule.

It is clear and undisputed that paragraph 17(b) of the Trust granted certain powers to First National Bank that altered the normal investment practices established by the prudent investor rule. See N.D.C.C. §§ 59-02-08.2 through 59-02-08.9.  In paragraph 17(b), Leonard Nelson granted to First National Bank the power to "retain indefinitely any property received by the trustee" and to "invest and reinvest the trust property in stocks, bonds . . . ."  See Docket No. 20-3.  Additionally, any investment made or retained by First National Bank in good faith was to be considered proper "despite any resulting risk or lack of diversification or marketability and although not of a kind considered by law suitable for trust investments."  Id.  More important, paragraph 17(b) expressly granted First National Bank the absolute right to indefinitely retain the shares of Medtronic stock regardless of any resulting risk so long as the trustee acted in good faith.  The plain language of paragraph 17(b) of the Trust substantially limited First National Bank's liability for retaining the shares of Medtronic stock despite any resulting risk or lack of diversification or marketability.

First National Bank is liable to Jane Nelson and Bruce Nelson if it did not act in reasonable reliance on the Trust's provisions.  See N.D.C.C. § 59-02-08.1(2).  Although there may have been alternate methods of managing the shares of Medtronic stock that would have diversified the Trust or resulted in improved financial results, the Court cannot base First National Bank's performance

on hindsight of the Trust's performance.  The assertion that First National Bank could have managed, or should have managed, the Trust differently is not sufficient to warrant a finding that First National Bank breached its fiduciary duties.  The Court expressly finds that paragraph 17(b) of the Trust permitted First National Bank to retain the shares of Medtronic stock in the Trust, despite the resulting lack of diversification and potential negative financial and tax consequences. The Court further finds that First National Bank reasonably relied on the express terms of the Trust, specifically paragraph 17(b), when it managed the shares of Medtronic stock after the death of Leonard Nelson.

The record also reveals that First National Bank reasonably relied on the implied terms of the Trust.  The Court finds that it was implied that Leonard Nelson desired to have a substantial portion of the trust assets consist of shares of Medtronic stock.  The "Investment Authorization," although not contained in the Trust, made clear Leonard Nelson's wishes as to his shares of Medtronic stock.  See Docket No. 22-7.  The Trust's primary asset was the Medtronic stock and Nelson never sold a share of the stock.  See Docket No. 21.  Leonard Nelson's strong allegiance to Medtronic is evidenced by the fact that, at the time of his death, the Trust contained 597,164 shares of Medtronic stock and most of the interest in two limited partnerships that owned more than 700,000 shares of Medtronic stock.  Further, it is not lost on the Court that Jane Nelson and Bruce Nelson do not contend that First National Bank breached its fiduciary duties by maintaining 597,164 shares of Medtronic stock while Leonard Nelson was alive.  It is readily apparent from the record that Leonard Nelson's wishes were to retain all of his shares of Medtronic stock, and that Jane Nelson and Bruce Nelson were aware of this desire.

The Plaintiffs contend that First National Bank breached its fiduciary duties by failing to

7

transfer the shares of Medtronic stock in a timely manner and by its mismanagement of the trust assets after the death of Leonard Nelson. "Generally, a trustee's discretion is broadly construed, but his actions must be an exercise of good faith and reasonable judgment to promote the trust's purpose." NationsBank of Virginia, N.A. v. Estate of Grandy, 450 S.E.2d 140, 143 (Va. 1994). An exculpatory provision, such as paragraph 17(b) of the Trust, relieves a trustee of liability "for breach of trust except when 'committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary.'" Donato v. BankBoston, N.A., 110 F. Supp. 2d 42, 49 (D.R.I. 2000) (quoting Restatement (Second) of Trusts § 222 (1959)). Less than two months after first receiving word that Jane Nelson and Bruce Nelson had chosen U.S. Bank as the successor trustee, First National Bank completed the transfer of trust assets. The Court finds that the Plaintiffs have not shown that the delay in transferring the trust assets – from October 6, 2006, to November 16, 2006 – was a breach of First National Bank's fiduciary duty, considering the processing and documentation required to transfer the shares of Medtronic stock and the trust assets to U.S. Bank.

The record further reveals that in managing the Trust after the death of Leonard Nelson, First National Bank consulted with an accountant and an attorney to assess the propriety and prudence of the Trust's investments in light of the purposes and liquidity needs of the Trust. See Docket No. 39-7. This was an obligation of the trustee required by the trustee's duties of care and prudence, as well as by statutory and common law. First National Bank discussed asset valuation and liquidation options with Leonard Nelson's personal accountant. The accountant advised First National Bank that the shares of Medtronic stock should be retained. First National Bank duly considered its options and followed what it in good faith deemed to be the best course of action in managing the trust assets after Leonard Nelson's death. With respect to relying upon the advice of counsel, the

trust instrument specifically provides as follows:

> In case of doubt as to the trustee's rights, powers, duties and responsibilities under this instrument, the trustee may select counsel and act or refrain from acting on the opinion or advice of such counsel and shall not be liable for any loss resulting from any such action taken or omitted to be taken in accordance with any such opinion or advice.

See Docket No. 20-3, Exhibit "E," p. 16, ¶ 23.  Hindsight cannot be utilized to conclude that First National Bank acted in bad faith under the circumstances.  Because paragraph 17(b) of the Trust altered First National Bank's duties under North Dakota's prudent investor rule, First National Bank was not obligated to immediately liquidate the Trust's primary asset, the Medtronic stock, within several weeks of the death of Leonard Nelson.  The Court finds that the Plaintiffs have failed to present facts which demonstrate that First National Bank acted in bad faith while managing the trust assets after the death of Leonard Nelson.[1]

## IV.   CONCLUSION

In summary, there are no genuine issues of material fact that create a disputed factual issue which warrant a trial on the merits.  In accordance with the express terms of the Leonard Nelson Trust, and the North Dakota Prudent Investor Act, First National Bank is not liable as a matter of

---

[1]The Court has considered all of the affidavits on record, including the affidavit of Ann Hart Wernz (Docket No. 32), in determining that summary judgment is appropriate under the circumstances.  In her affidavit, Wernz opined that First National Bank did not prudently administer the Trust after Leonard Nelson's death, that paragraph 17(b) of the Trust was not applicable to First National Bank's actions, and that even if paragraph 17(b) was applicable First National did not act in good faith when managing the Trust.  "However, 'conclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'" Logan v. Liberty Healthcare Corp., 416 F.3d 877, 882 (8th Cir. 2005) (quoting Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998)).  The Court finds that Wernz's affidavit is conclusory in nature and does not create a genuine issue of material fact.

law for any alleged losses attributable to a failure to diversify or liquidate trust assets under the facts and circumstances presented in the record before the Court.  For the reasons set forth above, the Court **GRANTS** First National Bank's motion for summary judgment.  (Docket No. 19.)

      **IT IS SO ORDERED.**

      Dated this 25th day of September, 2007.

                        */s/ Daniel L. Hovland*
                        Daniel L. Hovland, Chief Judge
                        United States District Court